## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRAVELER INNOVATIONS LTD. and DOONA HOLDINGS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> EVENFLO COMPANY, INC., <br><br> Defendant. | Civil Action No. 24-1204-RGA |

<u>MEMORANDUM OPINION</u>

Francis DiGiovanni (argued), Thatcher A. Rahmeier, FAEGRE DRINKER BIDDLE REATH LLP, Wilmington, DE; Alexander D. Brown, Scott D. Smiley (argued), Zac Davis, THE CONCEPT LAW GROUP, P.A., Fort Lauderdale, FL,

      Attorneys for Plaintiffs.

Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Frank A. Angileri, Tom W. Cunningham, John P. Rondini (argued), Francesca M. Cusumano-Gibson, Abdulai I. Rashid, Yasmeen Moradshahi, BROOKS KUSHMAN P.C., Royal Oaks, MI,

      Attorneys for Defendant.

January, 2026

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is the issue of claim construction of multiple terms in U.S. Patent Nos. 8,434,781 ("the '781 patent"), 8,469,389 ("the '389 patent"), and 8,469,390 ("the '390 patent") (collectively, "the patents"). The parties submitted a Joint Claim Construction Chart (D.I. 63), Joint Claim Construction Brief (D.I. 73), Joint Appendix (D.I. 74), and a letter addressing the parties' attempts to narrow their disputes. (D.I. 81). I heard oral argument on November 6, 2025. After oral argument, the parties submitted three additional letters. (D.I. 82; D.I. 83; D.I. 85).

## I.    BACKGROUND

Traveler Innovations and Doona (collectively, "Doona") filed a complaint against Evenflo alleging infringement of the '781, '389, and '390 patents. (D.I. 1 at 22–43). The three patents have the same inventors, have almost identical specifications (D.I. 73 at 5), and generally claim a "baby safety car seat convertible into a rollable baby seat" ('781 patent, Abstract; '389 patent, Abstract; '390 patent, Abstract).

## II.    LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (alteration in original) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of

these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted). "While claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1323).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (quoting *Markman*, 52 F.3d at 980). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one

skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id*.

## III.    CONSTRUCTION OF AGREED-UPON TERMS

I adopt the following agreed-upon constructions (D.I. 81; D.I. 82):

| Claim Term | Claims | Construction |
|---|---|---|
| "seat lowermost surface" | 389-1<br>390-1 | plain and ordinary meaning |
| "reference horizontal base plane"<br><br>"reference horizontal plane"<br><br>"base plane" | 781-1<br>389-1<br>390-1 | "a horizontal plane defined by the lowermost surface of the lower, support portion of the baby safety car seat" |
| "legs rotation axis" | 781-4 | An "axis" is "a single line with no width" |
| "common substantially horizontal axis" | 389-1<br>390-1 | An "axis" is "a single line with no width" |

## IV.    CONSTRUCTION OF DISPUTED TERMS

The parties agree that claim 1 of the '781 patent, claim 1 of the '389 patent, and claim 1 of the '390 patent are representative for purposes of claim construction. (D.I. 73 at 1–3). Those claims state:

> 1. A baby safety car seat having, at least when in use, a state in which the baby safety car seat is convertible into a rollable baby seat, the baby safety car seat, at least in the state, comprising:
> a *lower, support portion* including a *seat lowermost area configured to contact a vehicle surface* to which the seat is to be mounted and defining a reference horizontal base plane, and two *leg attachment areas* on two sides of the *lowermost area*;
> an *upper, seating portion* having a front, head area and a rear, feet area, the head area being spaced from the base plane to a distance greater than the feet area;
> a handle having a handle distal end and two handle proximal ends at which the handle is attached to the *lower portion of the seat* so as to be rotatable about a substantially horizontal handle rotation axis substantially parallel to and lying above the reference horizontal plane, between a storage position in which the handle distal end is disposed adjacent to the head area of the *upper portion of the seat* and at least a carrying position, in which the handle has an orientation substantially vertical relative to the substantially

4

horizontal  handle rotation axis and is disposed between the head and the feet areas of  the *upper portion of the seat*; and

a right and left pair of front and rear legs, *the legs of each pair having distal ends associated with wheels and proximal ends articulated to the seat lower portion at the corresponding leg attachment area*, both of the legs being rotatable relative to each other and to the *seat lower portion* between a storage position to be taken in a safety car seat mode of the seat, in which the distal ends of the legs are disposed above the base plane, and an operational position to be taken in a rolling-carrier mode of the seat, in which the distal ends of the legs are disposed below the reference horizontal plane, the legs being deployable into the operational position in combination with the handle being deployable at least into the carrying position.

('781 patent, col. 12, lines 15–52 (disputed terms italicized)).

1. A baby safety car seat having, at least when in use, a state in which the baby safety car seat is convertible into a rollable baby seat, the baby safety car seat, in the state, comprising:

a *lower, support portion* including a *seat lowermost area with a seat lowermost surface configured to contact a vehicle surface* to which the seat is to be mounted and defining a reference horizontal base plane;

a right and a left *leg attachment area* each at a corresponding right or left side of the *seat lowermost area*, the right and left *leg attachment areas* extending along a common substantially horizontal axis disposed above the seat lowermost surface;

an *upper, seating portion* having a front, head area and a rear, feet area, the head area being spaced from the reference horizontal base plane to a distance greater than the feet area; and

a right and left pair of front and rear legs*, the legs of each pair having distal ends associated with wheels and proximal ends articulated to the seat lowermost area at the corresponding right or left leg attachment area* so that each leg is rotatable about the common substantially horizontal axis between a storage position to be taken in a safety car seat mode of the seat, in which the distal ends of the legs are disposed above the reference horizontal base plane, and an operational position to be taken in a rollable mode of the seat, in which the distal ends of the legs are disposed below the reference horizontal base plane; and

a right and a left *locking mechanism* each disposed in the corresponding *legs attachment area* and configured to perform at least one of the following functions on the pair of the legs associated therewith: (a) to lock at least one of the legs to the lower portion of the seat in the storage position, allowing rotation of the leg when unlocked, from the storage position into the operational position; (b) to lock at least one of the legs, when in the operational position, to the lower portion of the seat; or (c) to lock the legs to each other.

('389 patent, col. 12, lines 14–51 (disputed terms italicized)).

1. A baby safety car seat having, at least when in use, a state in which the baby safety car seat is convertible into a rollable baby seat, the baby safety car seat, at least in the state, comprising:

a *lower, support portion* including a *seat lowermost area with a seat lowermost surface configured to contact an external surface* to which the seat is to be mounted, and defining a reference horizontal base plane, and two *leg attachment areas* at two sides of the *lowermost area* and above the seat lowermost surface;

an *upper, seating portion* having a front, head area and a rear, feet area, the head area being spaced from the reference horizontal base plane to a distance greater than the feet area;

a right and left pair of front and rear legs, *the legs of each pair having distal ends associated with wheels and proximal ends articulated to the seat lowermost area at the corresponding leg attachment area*, each leg being rotatable from a storage position to be taken in a safety car seat mode of the seat, in which the distal end of the leg is disposed above the reference horizontal base plane, via an intermediate position into an operational position to be taken in a rollable mode of the seat, in which the distal end of the leg is disposed below the plane; in each of the right and left pairs of front and rear legs, each of the front and rear legs is configured to rotate in the same direction as the other leg of the same pair when moving into the storage position and when moving into the operational position, and at least one of the legs in each of the right and left pairs being configured for moving at least along a part of its way between the storage and the operational positions under the influence of gravity; and

a *locking mechanism* configured for locking a first leg of each pair of legs to a second leg of the same pair of legs in at least one of the storage position, the intermediate position, or the operational position of the first leg, and unlocking the first and second legs from each other in at least one other position of the first leg.

('390 patent, col. 12, lines 14–52 (disputed terms italicized)).

1. **"lower, support portion"/"lower portion of the seat" ('781 claim 1; '389 claim 1; '390 claim 1)[1]**

    a. *Plaintiff's proposed construction*: lower portion of the baby safety car seat that supports the upper seating portion

    b. *Defendant's proposed construction*: indefinite under 35 U.S.C. § 112, ¶ 2.

    c. *Court's construction*: lower portion of the car seat that supports the upper seating portion

    **a. Figure 42/44 mistake**

The specifications of the three patents state:

> With reference to FIGS. 3A to 5, the combination-seat 28 comprises a baby seat 30 (FIG. 4A and 4B) having a lower support portion 44 including a seat lowermost area 49 [with a seat lowermost surface 49' (FIG. 4A)[2]] configured to contact a vehicle surface to which the seat is to be mounted (not shown) and an upper seating portion 51 with a front head area 45 and a rear feet area 47.

('781 patent, col. 5, lines 29–34).[3] None of Figures 3A, 3B, 4A, 4B, 4C, 4D, and 5, however, have anything that is labeled as "44." Figure 5 does have two items labeled "42."

Doona argues that it was a clear mistake to label "lower support portion" as "44" instead of "42" in the specification. (D.I. 74 at 5, 20–21). To support this, Doona notes that in every instance besides the "clear mistake," all three patent specifications refer to 44 as the "lower edges" or "curved edges." (*Id.* at 20). The term "lower support portion," Doona argues, "consistently refers to the base supporting the upper seat." (*Id.* at 21).

Evenflo argues that it was not a mistake to label "lower support portion" as 44 instead of 42 in the specification. Evenflo argues that Doona's correction of the mistake is improper as it would increase the size of the "lower support portion" by including the entire "lower base section."

---

[1] The parties sometimes identify "seat lower portion" as being included in this grouping. (D.I. 73 at 4; D.I. 81 at 2).

[2] The bracketed language is in the '389 and '390 patents, but not in the '781 patent.

[3] As the small difference in the specifications of the patents does not impact the mistake analysis, I use the '781 patent to discuss mistake and correction. However, the conclusion is applicable to all three patents.

(*Id.* at 12).    Evenflo argues that Doona cannot meet the requirements for judicial correction because the express claim language recites the "support portion" and the "base section" as distinct components, and because the patents' history shows that the two components have been treated differently. (*Id.* at 12–15).  Even if it was proper to make the correction, Evenflo argues that Doona has not gone through the proper process to correct the mistake. (*Id.* at 12).  As such, Evenflo argues that "lower support portion" and "lower base section" must be construed to mean different things. (*Id.*).

I find that it was a clear mistake to label "lower support portion" as "44" in the specification of the patents.  That it was a mistake is clear from the fact that the referenced figures do not have a "44" and that "44" is otherwise uniformly identified with "edges," "lower edges," "curved edges," or "curved lower edges." ('781 patent, col. 7, lines 3, 9, 13, 21–22, 30, 48; col. 10, line 23 (the '389 and '390 patents have similar usage of the phrases)).  The specifications show that 44 is a reference to the same section of the car seat as "the lowermost area 49" in the '781 patent (*compare* '781 patent, Fig. 2B, *with id.* at Fig. 4A) and "the lowermost surface 49'" in the '389 and the '390 patents (*compare* '389 patent, Fig. 2B, *with id.* at Fig. 4A; *compare* '390 patent, Fig. 2B, *with id.* at Fig. 4A).  These comparisons indicate a mistake, as the claims treat the "lowermost area" and "lowermost surface" as a part of the larger "lower portion." ('781 patent, col. 12, line 19; '389 patent, col. 12, line 17; '390 patent, col. 12, line 18).

I do not find, however, that it is clear that the patent drafters intended to label "lower support portion" as "42" in the disputed passage and Figure 5.

The mistake is clear.  The correction is not.  The patents do not have enough to clearly demonstrate what "lower support portion" would have been labeled had the patent drafters recognized their mistake.  The specifications reference "42" three times: first as "lower, base

section" ('781 patent, col. 7, line 2; '389 patent, col. 7, line 2; '390 patent, col. 7, line 2), next as "lower section" ('781 patent, col. 9, line 33; '389 patent, col. 9, line 33; '390 patent, col. 9, line 33), and last as "base section" ('781 patent, col. 10, lines 29–30; '389 patent col. 10, lines 29–30; '390 patent, col. 10, lines 29–30).  In none of the three references to "42" is it called the "lower support portion."

While Doona argues, "The term 'lower support portion' consistently refers to the base supporting the upper seat" (D.I. 73 at 21), the claims and specifications treat the "base" as part of the "lower portion" rather than a different term for the same structure.  Claim 8 of the '781 patent and claim 6 of the '389 patent explain that "the lower portion [of the seat] has a centrally disposed base." ('389 patent, col. 13, line 5; '781 patent, col. 13, line 14).  The "base" is something less than the entire "lower portion" of the seat. Similarly, while one passage of the specification addresses attaching a component of the legs to specific parts of the "base section 42" ('781 patent, col. 10, lines 29–30; '389 patent, col. 10, lines 29–30; '390 patent, col. 10, lines 29–30), other passages address the legs locking to the "lower portion of the seat"  ('781 patent, col. 6, lines 9–10, col. 12, line 9; '389 patent, col. 6, lines 9–10, col. 12, line 9; '390 patent, col. 6, lines 9–10, col. 12, line 9), indicating that the "base" and "lower portion" are different.  Aside from the use of "lower portion" in dispute here, the specifications do not reference "lower portion of the seat" by any number. ('781 patent, col. 6, lines 9–10, col. 12, line 9; *see also id.* col. 5, lines 50–54 ("seat lower portion"); '389 patent, col. 6, lines 9–10, col. 12, line 9; *see also id.* col. 5, lines 50–54 ("seat lower portion"); '390 patent, col. 6, lines 9–10, col. 12, line 9; *see also id.* col. 5, lines 50–54 ("seat lower portion")).  Neither the claims nor the specifications show that "lower support portion" is the same as "lower base section."

Doona's argument that 44 does not appear within figures 3A to 5 does not provide any additional support for the argument that the term was intended to be 42. The paragraph of the specifications which contains the mistake also mentions the "the upper seating portion 51." ('781 patent, col. 5, line 3; '389 patent, col. 5, line 34; '390 patent, col. 5, line 34). However, Figures 3A to 5 do not reference any "upper seating portion 51" or anything else labelled "51."

Despite it being clear that "lower support portion" was mislabeled as "44" in the specifications, I am unable to make a judicial correction changing "44" to "42."

### b. indefiniteness

Doona argues that "lower, support portion" and "lower portion of the seat" (collectively, "lower portion") should be construed as "lower portion of the baby safety car seat that supports the upper seating portion." (D.I. 73 at 4). Doona argues that the term, in its various forms, is used across the patents "to describe the structural portion of the seat assembly that is located below (i.e., lower than) and which supports the 'upper'' seating area, where the baby is placed." (*Id.*). Doona cites to the specifications and figures to argue that a person of ordinary skill in the art would understand the relationship between the term and the upper seating portion. (*Id.* at 4–6).

Evenflo argues that the term is indefinite under 35 U.S.C. § 112, ¶ 2 because the patents "do not explain the boundaries or distinctions between: (1) the 'lower base section 42;' (2) 'lower support portion 44'; (3) 'upper seating portion 51'; and (4) 'upper seating section 53.'" (D.I. 73 at 7–8). Evenflo argues that because no Figure identifies both structures, the figures in the '781 patent may or may not identify the same structure as both the "seat lowermost area" and the "lower support portion." (*Id.* at 9). Evenflo also notes that amendments to the figures in the '389 and '390 patents changed what "seat lowermost area" identifies. (*Id.* at 9–10). In the '389 and '390 patents, the structure that was "seat lowermost area" in the '781 patent is identified as "seat lowermost surface 49'" and "seat lowermost area 49" was relocated on the figures and appears to

identify what other figures in the two patents label as "lower base section." (*Id.* at 10). Beyond multiple terms referring to the bottom portion of the car seat, Evenflo argues that the patents do not disclose where the various lower portions stop and the upper portions begin. (*Id.* at 11). Thus, Evenflo argues, the patents "fail to be precise enough to afford clear notice of what is claimed." (*Id.* at 15 (internal citations omitted)).

Doona responds by arguing that Evenflo's purported confusion does not arise from the patents, but from Evenflo's conflation of five separate terms, the combination of all three patents without regard for the differences between them, and the references to earlier applications and European versions of the patents. (*Id.* at 17). Doona argues that, when each patent is read independently, the claims themselves have clear meanings which are supported by the specifications. (*Id.* at 18–19). Doona asserts that Evenflo cannot use the term "lower base section" for its indefiniteness argument because "lower base section" does not appear in the claims at all. (*Id.* at 18).

I find that the "lower portion" term is not indefinite. A person of ordinary skill in the art would understand what "lower portion" means based on the claims alone. Claim 1 of all three patents clearly describes the car seat as having a "lower, support portion" ('781 patent, col. 12, line 19; '389 patent, col. 12, line 17; '390 patent, col. 12, line 18) and an "upper, seating portion." ('781 patent, col. 12, line 24; '389 patent, col. 12, line 26; '390 patent, col. 12, line 24). These descriptions are clear that there is a portion of the car seat where the baby sits and a portion below that. While the patents include other components of the car seat in claim 1, such as legs, leg attachment areas, handles, and locking mechanisms, none of these other components distort the distinction between the lower portion and upper portion of the seat.

11

I find that the claims do not present any confusion between what is a "section" as opposed to what is a "portion." None of the claims use the word "section" at all. The only use of "section[s]" is in the specifications of the patents.[4]

Similarly, the claims are clear about the difference between the "lower portion" and the "lowermost area." Claim 1 of the patents provides for a car seat which is made of "a lower, support portion including a seat lowermost area [with a seat lowermost surface[5]] configured to contact an external surface." ('781 patent, col. 12, lines 19–20; '389 patent, col. 12, lines 17–19; '390 patent, col. 12, lines 18–20). The claims are clear that the "lower portion" "include[s]" a "lowermost area." ('781 patent, col. 12, line 19; '389 patent, col. 12, line 17; '390 patent, col. 12, line 18). The "lowermost area" is at the bottom of the "lower portion."

The specifications, including the figures, do not undercut my finding. While "claims must be read in view of the specification, of which they are a part[,] . . . [t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (internal quotations omitted). Although the specifications discuss upper and lower "sections" ('781 patent, col. 7, lines 1–3, col. 9, line 33, col. 10, lines 29–30; '389 patent, col. 7, lines 1–3, col. 9, line 33, col. 10, lines 29–30; '390 patent, col. 7, lines 1–3, col. 9, line 33, col. 10,

---

[4] In the context of the specifications, the distinctions between "portion," "section," and "area" are clear. The upper and lower "portions" are the broadest terms, referring to everything within the top of the car seat where the baby sits or everything below that. The base and seating "sections" describe specific structures that make up the upper and lower portions. The "areas," including the rear feet area, front head area, and lowermost area, reference distinct locations within the portions and sections. However, the distinctions between "portion," "section," and "area" are only present in the specifications. Thus, the distinctions can be used to help define the terms from the claims, but they cannot be used to create claim limitations. *Phillips*, 415 F.3d at 1323.

[5] The '389 and '390 patents include this language about "a seat lowermost surface." The '781 patent does not.

lines 29–30), the claims do not use the term. Since the claims do not distinguish between "sections" and "portions," a person of ordinary skill in the art would only need to be able to distinguish between a lower support portion and an upper seating portion, which, no doubt, such a person could do.

Even without a judicial correction addressing the numbering of "lower support portion" within the specifications, the patents clearly define "lower [support] portion." As already discussed, both the claims and specifications of the patents are clear that there is an "upper portion" of the seat and there is a "lower portion." A "single sentence in the specification cannot overcome the overwhelming evidence in other parts of the specification." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1366 (Fed. Cir. 2016). One mistake in the written description does not negate the otherwise reasonable understanding of the claims. Nor does the mistake support limiting the patents' claims to what the figures show. Before discussing the figures, the specifications state, "[E]mbodiments will now be described, by way of non-limiting example only" ('781 patent, col. 4, lines 35–36; '389 patent, col. 4, lines 35–36; '390 patent, col. 4, lines 35–36), showing that the figures are illustrative, not claim limiting. *Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006). Since a person of ordinary skill in the art would understand the reference to "lower support portion 44" is a mistake, that person would not be influenced by it in understanding the scope of the claims.

Therefore, I find that the term is not indefinite. "[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis." *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008). Doona's proposed construction represents this plain and unambiguous claim language. Thus, I

13

construe "lower, support portion" and "lower portion of the seat" as "lower portion of the car seat that supports the upper seating portion."

> ### 2. "upper, seating portion"/"upper portion of the seat" ('781 claim 1; '389 claim 1; '390 claim 1)
>
> a. *Plaintiff's proposed construction*: the upper portion of the baby safety car seat, wherein a baby can be seated
> b. *Defendant's proposed construction*: Indefinite under 35 U.S.C. § 112, ¶ 2.
> c. *Court's construction*: the upper portion of the car seat, wherein a baby can be seated

Doona argues that "upper, seating portion" and "upper portion of the seat" should be construed as "the upper portion of the baby safety car seat, wherein a baby can be seated." (D.I. 73 at 27–28). Evenflo argues that the term is indefinite under 35 U.S.C. § 112, ¶ 2. (*Id.* at 28). Evenflo cites its arguments about term 1 to argue "upper seating portion" is indefinite. (*Id.* at 28). Doona also responds by citing back to their previous arguments about term 1. (*Id.*).

The parties did not make new arguments for this term. I find that "upper, seating portion" and "upper portion of the seat" are not indefinite for the same reasons I found term 1 not indefinite. As previously discussed, claim 1 of the patents describes both an "upper, seating portion" and a "lower, support portion." ('781 patent, col. 12, lines 14–26; '389 patent, col. 12, lines 14–20, 26–29; '390 patent, col. 12, lines 14–27). Claim 1 of each of the patents describes the "upper, seating portion" as having "a front, head area and a rear, feet area." ('781 patent, col. 12, lines 24–25; '389 patent, col. 12, lines 26–27; '390 patent, col. 12, lines 12–25). A person of ordinary skill in the art would understand claim 1 of the patents to require the "upper, seating portion" be the "upper portion of the car seat, wherein a baby can be seated." The specifications support this by describing the "baby seat 30 (FIG. 4A and 4B) having a lower support portion . . . and an upper seating portion" and describing the "upper seating portion" as having "a front head area 45 and a rear feet

area 47." ('781 patent, col. 5, lines 30–35; '389 patent, col. 5, lines 30–35; '390 patent, col. 5, lines 30–35).

Thus, I construe the term as "the upper portion of the car seat, wherein a baby can be seated."

3. **"seat lowermost area [. . . ] configured to contact [a vehicle/an external] surface," "seat lowermost area," and "lowermost area" ('781 claim 1; '389 claim 1; '390 claim 1)**

    a. *Plaintiff's proposed construction*: a lower area of the lower support portion of the seat that is able to contact [a vehicle surface/an external surface] upon which the baby safety car seat sits
    b. *Defendant's proposed construction*: Indefinite under 35 U.S.C. § 112, ¶ 2.
    c. *Court's construction*:
        i. *'781 patent*: no construction necessary
        ii. *'389 patent*: no construction necessary
        iii. *'390 patent*: not construed at this time

Doona argues that the Court should construe "seat lowermost area [. . . ] configured to contact [a vehicle/an external] surface," "seat lowermost area," and "lowermost area" (collectively referred to as "lowermost area") as "a lower area of the lower support portion of the seat that is able to contact [a vehicle surface/an external surface] upon which the baby safety car seat sits." (D.I. 73 at 29–31). Doona asserts that the additional requirement of a "seat lowermost surface" in the '389 and '390 patents does not impact the construction. (*Id.* at 30).[6]

Evenflo argues that the term is indefinite under 35 U.S.C. § 112, ¶ 2. (*Id.* at 31). Evenflo cites to its arguments about claim 1 to support its argument here. (*Id.*). Doona cites back to their arguments about claim 1 as well. (*Id.*).

_____

[6] Claim 1 of the '781 patent describes the "seat lowermost area" as being "configured to contact a vehicle surface" ('781 patent, col. 12, lines 19–20), whereas the '389 and '390 patents describe the "seat lowermost surface" as "configured to contact" a vehicle ('389 patent, col. 12, lines 18–19) or external surface ('390 patent, lines 12, col. 19–20). The parties dispute whether this changes the meaning of the term across the patents. For this term, I address each patent independently so any difference across patents is accounted for.

### a. '781 patent

The term is not indefinite with respect to the '781 patent.  Claim 1 describes the "lower, support portion" as "including a seat lowermost area" ('781 patent, col. 12, line 19) and placing "two leg attachment areas on two sides of the lowermost area" (*id.* at col. 12, lines 22–23).  This wording identifies the "lowermost area" as a part of the "lower, support portion" and describes the relationship to the leg attachment areas.

The specification in the '781 patent is consistent with claim 1 in describing the "lowermost area."  The specification describes the lowermost area's location relative to the base, the leg attachment areas, and the surface for mounting the car seat.  As identified in claim 1, the specification also describes the "lower support portion" as "including a seat lowermost area" (*id.* at col. 5, lines 30–31), and having the "leg attachment areas [] on two sides of the lowermost area" (*id.* at col. 5, lines 38–39).

The location of the term is apparent from the claims and specification alone.  Thus, I find that "lowermost area" is not indefinite in the '781 patent.

Traditional claim construction principles apply for construing the term.  As used in the '781 patent, the term "lowermost area" does not need to be construed.  The claim language makes it clear that the lowermost area contacts the vehicle surface, and a person of ordinary skill in the art would understand this to refer to the bottom part of the car seat.

### b. '389 patent

The '389 patent adds a "seat lowermost surface" limitation.  The addition does not change the analysis.

Claim 1 states: "a lower, support portion including a lowermost area with a seat lowermost surface configured to contact a vehicle surface to which the seat is to be mounted and defining a

horizontal reference base plane." ('389 patent, col. 12, lines 17–20).  The limitation identifies the "seat lowermost area" as a portion of the broader "lower, support portion," and identifies the "seat lowermost surface" as a portion of the "seat lowermost area."  It is the "seat lowermost surface" that is "configured to contact a vehicle surface."  It is clear that, in operation, the two surfaces would contact each other.  Like the '781 patent, claim 1 of the '389 patent also describes the leg attachment area in relation to the seat lowermost area.  (*Id.* at col. 12, lines 21–25, 32–33).

The '389 patent's specification is consistent with the description in claim 1.  The specification starts by explaining that the "lower support portion 44 includ[es] a seat lowermost area 49 with a seat lowermost surface 49' . . . . configured to contact a vehicle surface." (*Id.* at col. 5, lines 30–33).  It then explains that the "seat lowermost surface 49' defines an imaginary horizontal base plane 29" (*id.* at col. 5, lines 35–36), and that the two leg attachment areas are "on two sides of the lowermost area located above the base plane" (*id.* at col. 5, lines 38–40).

Thus, I find that "lowermost area" in the '389 patent is not indefinite.  Traditional claim construction principles apply. The term "lowermost area" in the '389 patent does not need to be construed.

### c.  '390 patent

There are differences between the '390 patent and the '781 and '389 patents.[7]  The parties have not fully briefed the term as used in the '390 patent.  Nor did they argue it specifically at oral argument.  The term will be construed at a later time if it becomes necessary.

---

[7] Unlike the '389 patent, which describes the legs attaching at the sides of the lowermost area and defining a horizontal axis (for leg rotation) above the seat lowermost *surface* ('389 patent, col. 12, lines 21–25), the '390 patent describes the legs attaching at the sides of the lowermost area ('390 patent, col. 12, line 22, 30–31) but forming a horizontal axis above the seat lowermost *area* (*id.* at col. 12, lines 58–59).  The '390 patent, unlike the '389 patent, does not contain claim language describing the relationship between the lower portion, side walls, edges, lowermost area, and leg attachment areas.  (*See* '781 patent, col. 13, lines 13–25; '389 patent, col. 13, lines 4–15).

4. **"configured to contact [a vehicle surface/an external surface]" ('781 claim 1; '389 claim 1; '390 claim 1)**

   a. *Plaintiff's proposed construction*: able to contact [a vehicle surface/an external surface] upon which the baby safety car seat sits
   b. *Defendant's proposed construction*: designed to contact [a vehicle seating surface/a surface external to a vehicle]
   c. *Court's construction*: capable of contacting [a vehicle seating surface/an external surface]

Doona argues the term "configured to contact [a vehicle/an external surface]" should be construed as: "able to contact [a vehicle surface/an external surface] upon which the baby safety car seat sits." (D.I. 73 at 31–32).[8]

Evenflo argues that "configured to contact [a vehicle/an external surface]" should be construed as "designed to" in order to reflect the intentional design rather than a capability. (*Id.* at 33–34). Evenflo also argues that "external surface" should be construed as a surface external to a vehicle. (*Id.* at 35).

Doona responds that "able to" is proper because nothing in the patents shows intentional design. (*Id.* at 36). Doona responds to Evenflo's "external" argument by pointing that the patents cover the design of car seats, not cars. (*Id.*). Thus, Doona argues, the term should be understood as a surface external to the car seat. (*Id.*).

The patents use "configured to" to convey something about the design of the car seat. That is, the car seat is not just "able to" contact a car's seat or an external surface; that is a use for which it is designed. However, there is "nothing in the claims or written description[s] suggesting that 'configured to' should be construed more narrowly than 'capable of.'" *In re: Blue Buffalo Enters., Inc.*, 2026 WL 100470, *1 (Fed. Cir. Jan. 14, 2026). "Capable of" encompasses the design aspect that allows for the car seat to contact a car's seat or an external surface, and there is nothing in the

---

[8] The parties dispute exactly what should be construed. (D.I. 73 at 32). I think it makes sense to construe it as I have chosen to do.

patents that suggests "configured to" should be construed more narrowly than "capable of." Thus, I construe the term using "capable of" with the understanding that "capable of" does not include an intent requirement.

The '781 patent and the '389 patent both refer to a "vehicle surface," rather than an "external surface." ('781 Patent, col. 12, line 20; '389 patent, col. 12, lines 18–19). The parties do not dispute "vehicle surface." Thus, I construe the term "configured to contact a vehicle surface" for the '781 patent and the '389 patent as: "capable of contacting a vehicle seating surface."

"External" must be construed based on its use in the '390 patent, specifically in claim 1, which is the only time it appears in the claims. Claim 1 addresses the elements comprising a car seat. ('390 patent, col. 12, lines 14–17). The claim uses "external" to describe what the lowermost surface of the car seat is configured to contact. (*Id.* at col. 12, lines 18–19). The only discussion in the relevant part of the claim is about the car seat and its components. (*Id.*). Nothing in the claim refers to the car into which the car seat goes. "External" is a broad term; it simply means a surface external to the car seat that is described by the patent. Therefore, I construe the term "configured to contact a vehicle surface" for the '390 patent as: "capable of contacting an external surface." The "external surface" does not have to be outside of a vehicle.

### 5. "leg attachment area[]" and "leg attachment area" ('781 claim 1; '389 claim 1; '390 claim 1)

a. *Plaintiff's proposed construction*: area that accommodates the attachment of legs to the baby safety car seat
b. *Defendant's proposed construction*: location on [one side] of the seat where the proximal ends of each of the front and rear legs attach to the seat
c. *Court's construction*: location on the side of the seat that accommodates the attachment of legs to the car seat

Doona argues that "leg attachment area" should be construed as "area that accommodates the attachment of legs to the baby safety car seat." (D.I. 73 at 45–46). Doona argues that "leg

attachment areas" are "zones or regions on each side of the seat" where the legs are attached. (*Id.* at 45). There is nothing in the claims, as Doona argues, that create a rigid rule specifying how the legs are attached within the leg attachment area. (*Id.* at 45–46).

Evenflo argues that "leg attachment area" specifies both (1) the location on each side of the car seat which the legs are attached and (2) that, on each side, the proximal ends of the front leg and the rear leg are attached at the leg attachment area. (*Id.* at 47–49). Thus, Evenflo requests the term be construed as "location on [one side] of the seat where the proximal ends of each of the front and rear legs attach to the seat." (*Id.*).

The claims identify two leg attachment areas, one on each side of the car seat. The '781 patent and the '390 patent describe the lower support portion as containing "two leg attachment areas on two sides of the lowermost area." ('781 patent, col. 12, lines 22–23; '390 patent, col. 12, lines 21–22). Similarly, the '389 patent describes "a right and a left leg attachment area each at a corresponding right or left side of the seat lowermost area." ('389 patent, col. 12, lines 21–22).

While the claims specify that "a right and left pair of front and rear legs" are attached at the leg attachment areas ('781 patent, col. 12, line 39; '389 patent, col. 12, line 30; '390 patent, col. 12, line 28), the claims do not have a limitation requiring "the proximal ends of each" leg to be attached at the leg attachment area. As discussed in reference to the next term, this is a requirement of the legs, not the leg attachment areas. Therefore, I find that the construction of "leg attachment area" should only specify that it is where the legs on each side attach to the car seat, not how the legs attach.

I adopt the following construction of "leg attachment area": "location on the side of the seat that accommodates the attachment of legs to the car seat."

6. **"the legs of each pair having . . . proximal ends articulated to the [seat lower portion/seat lowermost area] at the corresponding [right or left] leg attachment area" ('781 claim 1; '389 claim 1; '390 claim 1)**

   a. *Plaintiff's proposed construction*: the legs of each pair are connected at their proximal ends (via a joint or joints, either directly or indirectly) to the seat [lower portion/lowermost area] at the corresponding leg attachment area
   b. *Defendant's proposed construction*: each of the front and rear legs has a proximal end that forms a joint with the [seat lower portion/seat lowermost area] at its corresponding leg attachment area
   c. *Court's construction*: each of the front and rear legs has a proximal end that forms a joint with the [seat lower portion/seat lowermost area] at its corresponding leg attachment area

At oral argument, the parties agreed their dispute over the term "the legs of each pair having . . . proximal ends articulated to the [seat lower portion/seat lowermost area] at the corresponding [right or left] leg attachment area" is dependent upon the meaning of "articulated." (Tr. 67:22–23).[9]  Doona argues that "articulate" means "to unite by forming a joint or joints."[10]  (D.I. 73 at 55 (citing American Heritage Dictionary of the English Language (4th ed.) (2006)).  "Joints," Doona argues, allows for the legs to be indirectly connected to the leg attachment area.  (*Id.* at 55–56).  Doona's construction would allow for one leg to be attached at the leg attachment area and another leg be attached to the first leg.  Similarly, Doona's construction would allow for intervening, non-leg objects, to be used with a series of joints to connect the legs to the attachment area.  Doona supports its argument with reference to two patents, U.S. Patent App. Pub. No. 2007/0176389 and U.S. Patent App. Pub. No. 2010/0052276, to argue that other patents use the word "articulated" to refer to a connection using multiple joints.  (*Id.* at 56).  Doona further argues that, if the patents

---

[9] Citations to the transcript of the argument, which is not yet docketed, are in the format "Tr. __."  This citation references a statement made by Doona's counsel.  Evenflo did not dispute counsel's statement or present arguments on anything other than what "articulated" means in the claim term.

[10] The definition cited by Doona is labeled in the dictionary as the definition for the use of the word in the anatomy context.  (American Heritage Dictionary of the English Language at 102).  All other definitions in the cited dictionary define "articulate" as describing a character or act of human speech.  (*Id.*).

required direct attachment of the legs, the patents would have used language such as "directly attached" or "directly pivoting on." (*Id.* at 58).

Evenflo responds by arguing that the claims require that each leg be attached by its proximal end directly to the leg attachment area. (*Id.* at 56–58). Evenflo argues that Doona's construction would essentially re-write the claims and allow for connection without regard to how or where the connection takes place. (*Id.* at 57).

I find that "articulated' requires that the proximal end of each leg be directly connected at the leg attachment area. The wording in the term itself requires that both legs on a given side are connected at the leg attachment area of the car seat. The relevant language reads: "the legs of each pair having distal ends associated with wheels and proximal ends articulated to the seat [lower portion[11]/lowermost area[12]] at the corresponding [right or left[13]] leg attachment area." ('781 patent, col. 12, lines 39–42; '389 patent, col. 12, lines 30–33; '390 patent, col. 12, lines 28–31). The language sets a requirement for each leg, not for the legs as a pair. Thus, the plural "proximal ends" requires the ends of each leg on one side of the seat to be articulated to the seat at the leg attachment area. All three patents require the legs to be articulated "to" the seat "at" the leg attachment area. ('781 patent, col. 12, lines 41–42; '389 patent, col. 12, lines 32–33; '390 patent, col. 12, lines 30–31) This requires each leg on a given side to be "articulated" to the seat, not to another leg or some other intermediary, and that the articulation occur at the leg attachment area, not at another location that subsequently connects to the leg attachment area. The "leg attachment

---

[11] The '781 patent uses "seat lower portion." ('781 patent, col. 12, line 41).
[12] The '389 patent and the '390 patent use "seat lowermost area." ('389 patent, col. 12, line 32; '390 patent, col. 12, line 30).
[13] The '389 patent adds "right or left." ('389 patent, col. 12, line 33).

area" reinforces the concept that the articulation results in the attachment of each leg at the leg attachment area.

Other claim limitations directly support this construction. Claim 1 of the '781 patent requires that "both of the legs [are] rotatable relative to each other and the seat lower portion." ('781 patent, col. 12, lines 42–43). Similarly, claim 1 of the '389 patent requires that "each leg is rotatable about the common substantially horizontal axis." ('389 patent, col. 12, lines 34–35). Claim 1 of the '390 patent requires "each leg being rotatable," with "each of the front and rear legs [] configured to rotate in the same direction as the other leg of the same pair." ('390 patent, col. 12, lines 31–32, 39–40). The claims' requirements on leg rotation demonstrate that the legs are articulated directly within the leg attachment area, not articulated at a lower point on the other leg in the pair.[14] If one leg was directly attached to a lower point of the other leg of the pair, the legs would be unable to rotate relative to both each other and the seat lower portion. Similarly, the legs would no longer be rotating about the shared axis as the indirectly attached leg would be rotating relative to the leg to which it is attached. Likewise, the leg attached to the other leg in the pair would move relative to the leg to which it was attached, not relative to the seat. Therefore, the legs must both be attached directly at the leg attachment area.

My construction of the disputed term is supported by the specifications. The specifications of all three patents state: "Each leg attachment area 73 accommodates the proximal ends of one rear and one front leg so that these legs are rotatable relative to each other and to the seat lower portion." ('781 patent, col. 5, lines 51–54; '389 patent, col. 5, lines 51–54; '390 patent, col. 5,

---

[14] Evenflo does not argue that the claims prevent the legs from being attached to each other at the point where both legs on a side are attached to the seat. As such, the construction does not prohibit the proximal end of one leg from being connected to the seat by a joint while also being attached to the other leg on the side with another joint.

lines 51–54).  The specifications describe the leg attachment area on one side as accommodating both the front and rear legs.  ('781 patent, col.5, lines 48–52; '389 patent, col. 5, lines 48–52; '390 patent, col. 5, lines 48–52).  This supports that the patents require both legs to be attached to the leg attachment area.[15]

Doona's attempt to argue that "articulated" means "connected . . . via a joint or multiple joints, either directly or indirectly" is unsuccessful.  (D.I. 73 at 54).  First, dictionary definitions are extrinsic evidence that "may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).  If I were to accept Doona's interpretation of the dictionary definition it provided, that "articulate" means "to unite by forming a joint or joints,"[16] the extrinsic evidence would vary from the claim language.  Second, the dictionary definition Doona presents is from a general-purpose dictionary.  (D.I. 73 at 55, JA 4).  "By design, general dictionaries collect the definitions of a term as used not only in a particular art field, but in many different settings.  In such circumstances, it is inevitable that the multiple dictionary definitions for a term will extend beyond the 'construction of the patent . . . .'"  *Phillips*, 415 F.3d at 1321 (internal citations omitted).  While Doona also offers a definition from the Dictionary of Engineering, this definition is also unhelpful as it discusses how "relative motion" occurs, not how the structures are connected.  (D.I. 73 at 55, citing JA 5).

---

[15] While not dispositive, I note that the relevant figures in each of the patents shows both legs to be attached to the leg attachment area.  (*See* '781 patent, Figs. 1B, 3A & 3B; '389 patent, Figs. 1B, 3A & 3B; '390 patent, Figs. 1B, 3A & 3B).

[16] Although the definition allows for a joint or multiple joints, nothing in the definitions specifies how the multiple joints must be arranged to qualify as "articulated."  Thus, the dictionary definition does not provide direct support that something can be indirectly "articulated" through a series of joints and intervening objects (i.e., a leg that is connected to another leg by a joint, with one of the legs directly attached to the car seat via a second joint).

Doona's reliance on patent applications from unrelated inventions is unpersuasive. Even if I accept Doona's argument that these unrelated patents demonstrate that "articulated" allows for indirect connections through multiple joints, these patents are extrinsic evidence which cannot be used to contradict the patents in dispute. *Vitronics*, 90 F.3d at 1584. Regardless, nothing in these other patents support Doona's argument that "articulated" allows for one structure to be indirectly connected through multiple subsequent joints with intervening structures. The cited patent applications show a single structure connected to another single structure with "a pair of brackets" (U.S. Patent App. Pub. No. 2007/0176389) and "a pair of pivotable links" (U.S. Patent App. Pub. No. 2010/0052276). In other words, the patent applications show direct connections between the two structures. Nothing about these unrelated patent applications support Doona's argument.

Thus, I construe the term as: "each of the front and rear legs has a proximal end that forms a joint with the [seat lower portion/seat lowermost area] at its corresponding leg attachment area," with "seat lower portion" being used for the construction of the term in the '781 patent, and "seat lowermost area" for the construction of the term in the other two patents.

### 7. "locking mechanism" ('389 claim 1; '390 claims 1 and 7)

    a. *Plaintiff's proposed construction*: The phrase is not a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6. Instead, it should be given its plain and ordinary meaning, i.e., "a structure used to lock something."

    b. *Defendant's proposed construction*: The term "locking mechanism" cannot be construed in isolation from the recited functional language found in claim 1 of the '389 Patent, claim 1 of the '390 Patent, and claim 7 of the '390 Patent. The "locking mechanism" and corresponding functional language should be construed as a means-plus-function under 35 U.S.C. § 112, ¶ 6.

    c. *Court's construction*: no construction necessary

Doona argues that "there is a presumption that § 112, ¶ 6 does not apply when the word 'means' is not used" and that the burden is on the Defendant to "show[] evidence that the claim term fails to recite sufficiently definite structure or otherwise fails to connote structure in light of the intrinsic evidence." (D.I. 73 at 70). Doona argues that "locking mechanism" is a structure

with a particular location stated in the claims.  (*Id.* at 70–71).  Doona argues that "locking mechanism" is a classic mechanical structure that a person of ordinary skill in the art would understand.  (*Id.* at 71–73).

Evenflo argues that "locking mechanism" should be construed as means-plus-function under 35 U.S.C. § 112, ¶ 6.  (D.I. 73 at 73–77).  Evenflo asserts that the claims require that the "locking mechanism" be "configured to" perform three different functions, further arguing that a "locking mechanism" cannot perform all these functions.  (*Id.* at 77, 80–81).  Evenflo disputes Doona's interpretation of the law, arguing that the presumption against means-plus-function "is not strong."  (*Id.* at 74 (internal quotation omitted)).  Evenflo argues that the presumption can be overcome not only by showing the claim fails to recite sufficiently definite structure, but also if the claim "recites function without reciting sufficient structure for performing that function."  (*Id.* at 74–75 (internal quotations omitted)).

Although Evenflo correctly cites the law, I find that "locking mechanism" is not a means-plus-function term.  The Federal Circuit has stated:

> The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. When a claim term lacks the word "means," the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function."

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (internal citations omitted).  The Federal Circuit has since confirmed that "the presumption against means-plus-function claiming is not 'strong' and that a challenger need not show that the limitation is 'essentially . . . devoid of anything that can be construed as structure.'  Rather, a challenger need only show that the structure is not 'sufficient.'"  *Egenera, Inc. v. Cisco Systems, Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020) (internal citations omitted).

The claims do not use the word "means." Thus, the presumption against means-plus-function applies. Evenflo has not shown that "locking mechanism" "fails to recite sufficiently definite structure" or "function without reciting sufficient structure for performing that function." "Locking mechanism" is a term for a mechanical structure well understood in the art. *See Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996). A person of ordinary skill in the art would understand "locking mechanism" without the need for additional descriptions of the structure. *Id.* The specifications describe various locking mechanisms that would support this understanding for a person of ordinary skill in the art. (*See* '389 patent, col. 6, lines 7–33, col. 8, lines 8–10, col. 9, lines 24–49, col. 11, line 66–col. 12, line 2; '390 patent, col. 6, lines 7–33, col. 8, lines 8–10, col. 9, lines 24–49, col. 11, line 66–col. 12, line 2).

Evenflo's argument regarding the three claimed functions of the "locking mechanism" is unconvincing. None of the functions are unique such that they would not be encompassed by the term. Nor do the functions require a structure beyond what is understood in the art as a "locking mechanism." While Evenflo argues that the structures must be unique to accomplish all three functions, this argument is misguided. Evenflo relies on *Rhine v. Casio, Inc.*, 183 F.3d 1342 (Fed. Cir. 1999), to argue that "at least" must be construed to require a locking mechanism that can accomplish all the functions. (D.I. 73 at 80). However, *Rhine* held that: "To give meaning to the phrase 'at least one light source,' we must construe claim 1 to cover a device that has only one light source or a device that has more than one light source." *Rhine,* 183 F.3d at 1346. Notably, *Rhine* overturned a construction of "at least one light source" that required two light sources. *Id.* at 1345–46. Therefore, a locking mechanism "configured for locking . . . in at least one of" three positions ('389 patent, col. 12, lines 42–44; '390 patent, col. 12, lines 47–49) does not require that

the locking mechanism lock in all three ways. Instead, it requires that the locking mechanism locks in at least one of the ways.

Thus, I find "locking mechanism" is a term for a mechanical structure that is known in the art and which "connotes sufficiently definite structure to a person of ordinary skill in the art." *Egenera*, 972 F.3d at 1374. I therefore do not need to construe "locking mechanism."

> **8. "locking mechanism . . . configured to perform at least one of the following functions on the pair of the legs associated therewith: (a) to lock at least one of the legs to the lower portion of the seat in the storage position, allowing rotation of the leg when unlocked, from the storage position into the operational position; (b) to lock at least one of the legs, when in the operational position, to the lower portion of the seat; or (c) to lock the legs to each other"" ('389 claim 1)**

> **9. "locking mechanism configured for locking a first leg of each pair of legs to a second leg of the same pair of legs in at least one of the storage position, the intermediate position, or the operational position of the first leg, and unlocking the first and second legs from each other in at least one other position of the first leg" ('390 claim 1)**

> **10. "locking mechanism is configured to perform at least one of the following functions: (a) to lock at least one of the legs to the lower portion of the seat in at least one of the storage position or operational position, allowing rotation of the leg when unlocked, between the storage and operational positions to lock the legs to each other in at least one of the storage, operational, or intermediate positions of at least one of the legs" ('390 claim 7)**

The last three terms were proposed for the construction on the assumption that I would find them to be means-plus-function terms. Since I have found otherwise, I do not need to address these three terms.

## V.    CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.