**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TRAVELER INNOVATIONS LTD. and DOONA HOLDINGS LTD.,

Plaintiffs,

v.

EVENFLO COMPANY, INC.,

Defendant.

Civil Action No. 24-1204-RGA

MEMORANDUM ORDER

After a *Markman* hearing, I adopted the agreed-upon construction for four terms and construed seven disputed terms from the three asserted patents, which are U.S. Patent Nos. 8,434,781 (the "'781 patent"), 8,469,389 (the "'389 patent"), and 8,469,390 (the "'390 patent"). Before me is Plaintiffs Traveler Innovations and Doona Holdings' Motion for Reargument and Reconsideration of the Court's Construction of "Articulated." (D.I. 107). I have considered the parties' briefing. (*Id.*; D.I. 116; D.I. 199). For the reasons set forth below, this motion is DENIED.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *U.S. ex rel Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848 (3d Cir. 2014) (cleaned up); *see Max's Seafood Café v. Quinteros*, 176 F.3d 669, 667 (3d Cir. 1999). Accordingly, for a judgment to be altered or amended, the party seeking reconsideration must show "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Schumann*, 769 F.3d at 848–49.

Plaintiffs argue that I construed "articulated" to mean "attached." (D.I. 107 at 2). However, I did not construe the term "articulated," nor did the parties ask me to do so. (D.I. 101 at 21). Of the terms the parties requested me to construe, the word "articulated" only appeared as a part of the larger term "the legs of each pair having . . . proximal ends articulated to the [seat lower portion/seat lowermost area] at the corresponding [right or left] leg attachment area." (*See* D.I. 73). I construed the full term as "each of the front and rear legs has a proximal end that forms a joint with the [seat lower portion / seat lowermost area] at its corresponding leg attachment area." (D.I. 105 at 2).

As I noted in my *Markman* opinion, "the parties agreed their dispute over the term . . . is dependent upon the meaning of 'articulated.'" (D.I. 101 at 21). The fact that the dispute focused on one word in the term does not mean that I abandoned the other approximately twenty words in the term and construed a new, single-word term. Instead, I construed the entire term such that my construction gave meaning to all the words as used in combination in the term, not any one word in isolation. In finding that "'articulated' requires that the proximal end of each leg be directly connected at the leg attachment area," I determined that "articulated" *as used in the term* "requires that the proximal end of each leg be directly connected at the leg attachment area." (*See* D.I. 101 at 22).

After explaining that "articulated," as used in the term, requires the legs be directly connected at the leg attachment area, I noted that the term's inclusion of "leg attachment area" "reinforces the concept that the articulation results in the attachment of each leg at the leg attachment area." (D.I. 101 at 22–23). Based on the parties' request, I construed "leg attachment area" as an independent term meaning "location on the side of the seat that accommodates the attachment of legs to the car seat." (D.I. 105 at 2). As the independently construed "leg attachment

area" term is contained within the larger "the legs of each pair having . . . proximal ends articulated to the [seat lower portion/seat lowermost area] at the corresponding [right or left] leg attachment area" term, I explained how the constructions of the terms interact, concluding that "the legs must both be attached directly at the leg attachment area." (D.I. 101 at 23). My explanation of the relationship between the terms was not intended to treat the terms as one or extend the "attachment" requirement from the "leg attachment area" to the larger term. Rather, my explanation was aimed at detailing the interaction between the larger term and the independently construed term within it. There was nothing in this explanation construing "articulated" as "attached."

Plaintiffs argue that my analysis improperly handled the "'rotate' limitations"[1] of the three patents. (D.I. 107 at 3–7). Plaintiffs make this argument in two parts.[2]

First, Plaintiffs argue that I failed to explain how claim 1 of the '390 patent supports my construction of "the legs of each pair having . . . proximal ends articulated to the [seat lower portion/seat lowermost area] at the corresponding [right or left] leg attachment area." (D.I. 107 at

[1] Plaintiffs call the patents' discussions of leg rotation the "'rotate' limitation[s]." (*See* D.I. 107 at 4–7). Defendant begins its opposition by noting that the argument is "what Plaintiffs call the 'rotate' limitations." (D.I. 116 at 6). I too will call them the "'rotate' limitations."

[2] Plaintiffs submitted supplemental briefing on "subsequent authority" from the deposition testimony and reports of both parties' experts. (D.I. 199). It appears that Plaintiffs intend for the subsequent authority to support their "'rotate' limitations" argument. (*Id.* at 1). While the expert evidence may have been "new" to the parties in the sense that the reports were written and the depositions taken after claim construction, there is nothing indicating that the arguments in the reports and testimony became available only after my *Markman* opinion. Had the parties sought expert evidence prior to the *Markman*, they could have obtained the same information to use in support of their initial claim construction arguments. Therefore, the subsequent authority of the expert evidence discussed in Plaintiffs' supplemental briefing is not "newly discovered" for purposes of a motion for reconsideration. *See Schumann*, 769 F.3d at 849; *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010). "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Thus, I do not consider Plaintiffs' subsequent authority.

4, citing D.I. 101 at 23). To explain how my construction is consistent with other portions of the claim that the term appears in, I began by quoting relevant portions from claim 1 of each of the three patents. (D.I. 101 at 23). I then provided a general analysis of how my construction was consistent with these claims; I did not analyze the specific limitations of each patent's claim 1 separately. (*Id.*). I believe Plaintiffs are misattributing each sentence of my analysis to a particular patent. No sentence of my analysis has a citation or reference to a specific patent because I intended for my analysis to provide an overview of the three claims. Although there may be different limitations in the three claims,[3] my general analysis is consistent with claim 1 of the '390 patent because legs that are attached at the leg attachment area could be capable of rotating in the same direction as each other.

Second, Plaintiffs argue that the "'rotate' limitation" of each patent can be met under Plaintiffs' proposed definition of "articulated." (D.I. 107 at 4–7). The criticized portion of my opinion occurred after a direct analysis of the claim language; I thought there was additional specification support for my conclusion. My analysis of the "'rotate' limitations" focused on what the words in the patents explained the legs could do, not the motion the physical legs were capable of doing. Therefore, there was nothing in my claim construction opinion that required expert testimony. Similarly, the parties already presented arguments using the "rotate" versus "revolve" distinction, and the related "about" versus "on" distinction is based on the same facts that were available at the time of the initial argument. (Tr. 88:18–89:4). There is no reason to relitigate the construction of the term to allow for a second chance to make these arguments. This conclusion is particularly true as the disputed term does not include the description of rotating "about." My

[3] Determining the specific limitations of each patent's claim 1 was not an issue during the *Markman* proceeding.

explanation of the term's construction with reference to the rotation "about" the axis was simply to show how the construction is consistent with the claims and specifications across the patents. Thus, Plaintiffs have not identified any grounds that would warrant reconsideration of the use of the "'rotate' limitations" in my construction of the disputed term.

Plaintiffs argue that my construction improperly imported a limitation from the specifications of the patents. (D.I. 107 at 7). However, as Plaintiffs note, the example from the specifications was used to "support [the] conclusion." (*Id.*). As addressed above, I began my construction with the claim language. After construing the term based on the claim language, I explained how the construction is consistent with the specifications. My analysis of the specifications did not add a limitation that was not already present in the claims. Thus, the analysis of the specifications does not warrant reconsideration.

Finally, Plaintiffs argue that I erred in interpreting their extrinsic evidence. (*Id.* at 8). First, Plaintiffs argue that I improperly determined that their dictionary definitions of "articulated" would "'vary from' or 'contradict' the claim language." (*Id.*). However, Plaintiffs' argument relies on their unsuccessful attempt to relitigate the construction of the disputed term. Therefore, there is no error of law or fact that justifies reconsideration. Second, Plaintiffs argue that my understanding of the prior art is incorrect, and thus, an error of fact that warrants reconsideration. (D.I. 107 at 9–10). In my *Markman* opinion, I explained that nothing in the prior art identified by Plaintiffs "allows for one structure to be indirectly connected through multiple subsequent joints with intervening structures." (D.I. 101 at 25). This analysis of the "direct connection" is true. Nothing in either of Plaintiffs' prior art references indicate that "articulated" allows for a component to be connected to a main structure via a joint connecting it to an intermediary component that is connected to the main structure with a separate joint. Additionally, both prior

art references use the phrase "articulated to" (U.S. Patent App. Pub. No. 2007/0176389; U.S. Patent App. Pub. No. 2010/0052276), rather than the disputed term's language of "articulated at." The difference between articulated "to" and articulated "at" raises serious questions of the usefulness of the prior art references. However, I ultimately do not need to consider these differences because the use of extrinsic evidence is discretionary, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980–81 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996), and the intrinsic evidence presents a clear meaning of the term.

Plaintiffs have not identified an intervening change in the controlling law, new evidence that was not previously available, or a clear error of law or fact. Thus, Plaintiffs' motion for reargument and reconsideration (D.I. 107) is DENIED.

IT IS SO ORDERED.

Entered this 30th day of September, 2026

Richard G. Andrews
United States District Judge